UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JENNIFER ANNIE INEZ PETTY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **7:25-cv-1908-EGL** |
| | ) | |
| FRANK BISIGNANO, | ) | |
| *Commissioner of* | ) | |
| *Social Security*, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION & ORDER

Jennifer Annie Inez Petty seeks judicial review of the Commissioner of Social Security's denial of her application for Disability Insurance Benefits. After careful review of the administrative record and the parties' briefs, the Court **AFFIRMS** the Commissioner's decision.

## BACKGROUND

### A. Procedural Background

On September 17, 2021, Petty protectively filed an application for Disability Insurance Benefits, alleging disability beginning January 1, 2018. Doc. 13 at 4. The Social Security Administration denied the claim on January 21, 2022, and again on reconsideration on September 23, 2022. *Id.* Petty requested a hearing, which an ALJ

held by telephone on March 7, 2023. *Id.* The ALJ denied her claim on May 30, 2023. *Id.*

The Appeals Council denied review on August 21, 2023. *Id.* Petty then sought review in this Court, which remanded the case on April 24, 2024. *Id.*; *see also Petty v. Soc. Sec. Admin.*, No. 7:23-cv-1722, Doc. 14 (N.D. Ala. April 24, 2024). Following remand, an ALJ held a new hearing on January 28, 2025, and again denied Petty's claim on March 10, 2025. Doc. 13 at 4. That decision became the Commissioner's final decision. *Id.*

### B. Factual Background

Petty was born on May 5, 1981, and was 40 years old on the date last insured. *Id.*; *see also* Doc. 14 at 2. She completed high school and has no past relevant work. Doc. 13 at 5. She alleged disability beginning May 4, 2021, because of depression, anxiety, adjustment disorder, degenerative disc disease, fibromyalgia, and bilateral plantar fasciitis. Doc. 14 at 2.

## ALJ DECISION

Disability determinations follow a five-step sequential evaluation. The ALJ considers whether the claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments; (3) has an impairment meeting or equaling a listed impairment; (4) can perform any past relevant work; and, if not,

(5) can adjust to other work existing in significant numbers in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

At step one, the ALJ found that Petty had not engaged in substantial gainful activity through the relevant period, from May 4, 2021, through December 31, 2022. Doc. 9-18 at 19. At step two, the ALJ found the following severe impairments: degenerative disc disease of the lumbar spine, bilateral plantar fasciitis, fibromyalgia, obesity, depression, and anxiety. *Id.* at 20.

At step three, the ALJ found that none of Petty's impairments, alone or in combination, met or equaled a listed impairment. *Id.* The ALJ then assessed Petty's residual functional capacity (RFC) and found she could perform a modified range of sedentary work. *Id.* at 22. Specifically, Petty could occasionally climb ramps and stairs but never ropes, ladders, or scaffolds; could occasionally balance, stoop, kneel, crouch, or crawl; could tolerate extreme cold or vibration; could frequently handle, finger, or feel with both upper extremities; could not be exposed to unprotected heights, hazardous machinery, or commercial driving; could understand and remember simple instructions; could maintain attention and concentration to carry out simple instructions in at least two-hour intervals over an eight-hour workday with customary breaks; could occasionally interact with the general public; and could adapt to occasional changes in work environment. *Id.*

3

At step four, the ALJ found Petty had no past relevant work and proceeded to step five. *Id.* at 31. Based on vocational expert testimony, the ALJ found at step five that Petty could perform jobs existing in significant numbers in the national economy, including final assembler, lens inserter, and printed circuit board screener. *Id.* at 31-32. The ALJ therefore concluded that Petty was not disabled from May 4, 2021, through December 31, 2022. *Id.* at 32-33.

## STANDARD OF REVIEW

Judicial review under the Social Security Act is narrow. The Court asks only whether the Commissioner's decision is supported by substantial evidence and rests on the correct legal standards. *Winschel*, 631 F.3d at 1178.

Whatever the meaning of "substantial" in other contexts, the threshold here "is not high." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). The Court must affirm if that standard is met, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted).

**DISCUSSION**

Petty seeks reversal and remand on three grounds. The Court addresses each in turn.

## I.    Evaluation of Medical Opinions & Findings

The ALJ found the opinions of state agency psychological consultants Drs. Gloria Roque and Pauline Hightower "largely persuasive" but declined to adopt two specific limitations: that Petty require non-confrontational feedback and access to an isolated workstation. Doc. 9-18 at 30. Petty argues this rejection was arbitrary. Doc. 13 at 13-17. She contends the ALJ acknowledged no contrary medical evidence and that the ALJ's characterization of her social functioning as "generally intact" directly contradicts the ALJ's own step-three finding of moderate limitations in social interaction. *Id.* She also argues the ALJ improperly substituted Petty's lay self-reports for credentialled medical opinion. *Id.*

The Commissioner responds that neither consultant had reviewed Petty's Adult Function Reports, and that the ALJ properly weighed the expert opinions against the broader record, including Petty's own accounts of her daily functioning. Doc. 14 at 11-12.

An ALJ may rely upon a claimant's own statements when evaluating a disability claim. *Morrissette v. Astrue*, No. 1:09-cv-314, 2010 WL 2491003, at *3 (M.D. Ala. June 18, 2010) (citing *Sykes v. Bowen*, 854 F.2d 284, 286 (8th Cir. 1988)

& 20 C.F.R. § 404.1545(a)(3)). The ALJ must, however, clearly articulate her reasons for departing from a treating physician's opinion. *Winschel*, 631 F.3d at 1179.

The ALJ did so here. She previously found that the non-confrontational feedback limitation lacked clear vocational relevance, Doc. 9-19 at 15; Doc. 9-3 at 44, a conclusion this Court has affirmed in analogous circumstances, *see, e.g.*, *Cody v. Soc. Sec. Admin., Comm'r*, No. 4:20-cv-568, 2021 WL 5232554, at *9 (N.D. Ala. Nov. 10, 2021). As for the workstation limitation, the consultants stated only that Petty "would benefit from her own workstation," Doc. 9-4 at 29, which is a recommendation rather than a functional requirement. A physician's observation that a patient would benefit from an accommodation does not compel the ALJ to impose it as a vocational restriction. *See Daywalt v. Kijakazi*, No. 1:20-cv-277, 2021 WL 3679304, at *8 (M.D.N.C. Aug. 19, 2021) ("A *recommendation* that a patient undertake certain ameliorative measures does not equate to a physical *restriction* or a judgment about what Plaintiff can still do despite her impairments."). The ALJ further explained that neither limitation was supported by the medical evidence, Doc. 9-18 at 30, or Petty's own reports of generally intact social functioning, *id.* (citing Doc. 9-8 at 33-40, 50-56).

Petty's objection therefore ultimately asks this Court to weigh the evidence differently than the ALJ did. That is not the Court's role. *See Dyer v. Barnhart*, 395

F.3d 1206, 1210 (11th Cir. 2005). Because the ALJ clearly articulated its reasons for departing from the own-workstation and non-confrontational feedback recommendations, reversal is not warranted on this issue.

## II.    Obesity Analysis

Petty argues that the ALJ, having found obesity a severe impairment, failed to evaluate its functional impact or its effect on her other impairments. Doc. 13 at 19-23.

The Commissioner responds that the ALJ addressed Petty's obesity multiple times in its RFC analysis and that Petty has not shown that obesity produced limitations beyond those already addressed. Doc. 14 at 9.

The ALJ discussed Petty's weight repeatedly throughout its RFC determination and found that her obesity constituted a severe impairment. *See, e.g.*, Doc. 9-18 at 23, 25-28. While the ALJ did not expressly state at every available point that obesity was being considered in relation to Petty's other impairments, such a level of granular detail is unnecessary. *See Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) (The ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record."). Nor does an ALJ need to document every aspect of its disability decision at optimal length. *See Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). Given the ALJ's

recognition of Petty's obesity, there is no reason to suspect that the ALJ failed to consider it in relation to her other disabilities.

More fundamentally, Petty's argument inverts the burden of proof. The claimant bears the burden of showing that obesity produced specific functional limitations. *See* 20 C.F.R. § 404.1512(a); *see also Flynn v. Heckler*, 768 F.2d 1273, 1274 (11th Cir. 1985). Petty has not identified any such limitation that the ALJ overlooked or that the RFC fails to address. *See, e.g.*, *Barbara B. v. Comm'r, Soc. Sec. Admin.*, No. 1:22-cv-93, 2023 WL 12147828, at \*13 (N.D. Ga. Mar. 29, 2023) ("Plaintiff has not identified any specific findings that would require the ALJ to include more restrictive limitations in the RFC assessment."); *Maxena v. Barnhart*, No. 6:07-cv-211, 2008 WL 686907, at \*7 (M.D. Fla. Mar. 11, 2008) (holding that plaintiff failed to "identify with specificity" the limitations arising from her obesity that the ALJ "allegedly overlooked"); *Fabian v. Astrue*, No. 8:08-cv-1254, 2009 WL 3334783, at \*4 (M.D. Fla. Sept. 18, 2009) ("[I]n order to demonstrate reversible error with respect to obesity, the plaintiff must show that she had functional limitations from that condition that were not included in the law judge's determination of the plaintiff's residual functional capacity.").

Petty speculates that the ALJ's RFC determination and the vocational expert's occupational evaluation could have been different had the ALJ considered her obesity more fully. Doc. 13 at 21-22. But that begs the question because it assumes

that neither the vocational expert nor the ALJ considered Petty's obesity, and it further lacks any substantive demonstration that the ALJ's analysis *would* be different. *See Wallace v. Berryhill*, No. 2:17-cv-168, 2018 WL 1399255, at *6 (N.D. Ala. Mar. 20, 2018) (holding that "Plaintiff's speculation that further development of the record might have produced evidence favorable to her" is not enough to justify remand).

### III.    Medication Side Effects

The ALJ accounted for Petty's allegations of medication side effects, including expressly addressing "drowsiness, dizziness, and frequent urination." Doc. 9-18 at 27, 29. The ALJ recounted Petty's April 2022 report that taking her medications at night sent her to the bathroom multiple times overnight, while taking them during the day required her to stay at home; Petty's May 2022 report that her diuretic resulted in six to seven bathroom trips a day and required her to wear Depends; and the therapy records from the summer of 2022 reflecting similar complaints. *Id.* at 27. The ALJ nonetheless found "little evidence to show that the claimant has experienced medication side effects refractory to adjustments in medication frequency, dosage, or the underlying medication itself," and found that the "indications of urinary incontinence" appearing in the spring and summer of 2022 were not present "for a period of 12 months" and were "not to the extent there would be a corresponding workplace functional limitation." *Id.* at 29.

9

Petty raises three objections: that the ALJ applied the wrong legal standard by asking whether her side effects were theoretically improvable rather than whether they actually limited her functioning; that the ALJ misapplied the twelve-month durational requirement at the RFC stage; and that the ALJ ignored nausea and stomach pain documented in VA and rheumatology records. Doc. 13 at 24-28. None warrants remand.

The evaluation of subjective symptoms, including medication side effects, is committed in the first instance to the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010). A clearly articulated finding supported by substantial evidence will not be disturbed, *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995), and the question on review is not whether the ALJ could reasonably have credited Petty's account, but whether the ALJ was clearly wrong to discount it, *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). It is likewise Petty's burden to establish that her side effects produced functional limitations beyond those the RFC already contains. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. § 404.1512(a); *see Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (affirming an ALJ's determination that medication side effects did not present a significant problem).

10

*First*, the "refractory to adjustments" sentence, read in the context of the decision as a whole, did not impose a heightened or otherwise erroneous legal standard. In weighing the intensity and persistence of symptoms, an ALJ considers "[t]he type, dosage, effectiveness, and side effects of any medication," and the other measures a claimant uses for relief. 20 C.F.R. § 404.1529(c)(3)(iv)-(v); *see generally* SSR 16-3p, 2017 WL 5180304, at *8 (S.S.A. Oct. 25, 2017). Whether the reported side effects followed the timing of doses, prompted (or never prompted) a change in medication regimen, or persisted despite treatment bears directly on how severe and persistent they were. The ALJ's observations followed from Petty's self-reports that her urinary symptoms followed the timing of her medication use, and that she was otherwise content with her medication regimen and needed no changes. Doc. 9-18 at 27. In describing Petty's urinary symptoms as not appearing "refractory to adjustments," the ALJ therefore simply identified what the record did, and did not, contain.

Nor did the ALJ neglect her duty to investigate Petty's side effects generally. In the cases Petty cites, Doc. 13 at 23-24, remand resulted because the ALJ simply made no findings on the subject at all, *see, e.g.*, *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981); *McDevitt v. Comm'r of Soc. Sec.*, 241 F. App'x 615, 619 (11th Cir. 2007). Here, by contrast, the ALJ elicited, recounted, and analyzed evidence of Petty's side effects throughout several pages of her opinion. *See* Doc. 9-18 at 27-29.

11

More important, the ALJ's "refractory" observation was not the operative finding. What appears to have resolved the issue was her determination that the documented side effects did not rise "to the extent there would be a corresponding workplace functional limitation." *Id.* at 29. Substantial evidence supports that determination. And Petty has not identified any workplace limitations that her side effects would impose that are not already accounted for in the RFC. Her allegations of drowsiness and dizziness are not clearly corroborated by any medical opinion in the record. *See Koepp v. Astrue*, No. 10-C-1002, 2011 WL 3021466, at *8 (E.D. Wis. July 22, 2011) ("A social security claimant cannot establish disability based solely on his own statements about his symptoms and limitations."). And the RFC already appears to accommodate them, as it prohibits Petty from being exposed to unprotected heights, hazardous machinery, and commercial driving, and limits her to simple instructions performed in two-hour intervals with customary breaks. *Id.* at 22.

As for her urinary symptoms, the July 2022 therapy note on which Petty principally relies records her reports and their effect on her self-esteem and daily activities, Doc. 9-17 at 66, but it is not a "medical opinion" the ALJ was required to adopt or weigh for persuasiveness, *see McCurley v. Astrue*, No. 6-cv-649, 2008 WL 4682260, at *4 (N.D. Okla. Oct. 22, 2008) ("No medical evidence supports Plaintiff's allegations of severe urinary and bowel incontinence; her testimony alone

cannot establish an impairment."); 20 C.F.R. § 404.1513(a)(2)-(3); *cf. Lopez v. Astrue*, 807 F. Supp. 2d 750, 764 (N.D. Ill. 2011) ("[A] doctor's notation of a claimed symptom or subjective complaint from the patient is not medical evidence."). There is, moreover, no conflict between accepting that a condition is distressing and burdensome in daily life and finding that it requires no workplace limitation beyond those already imposed; the mere existence of the former does not, without more, compel the latter. *See Moore*, 405 F.3d at 1213 n.6; *cf. Daywalt*, 2021 WL 3679304, at *8. It remained Petty's burden to show what accommodation her symptoms actually required, but she offers no evidence, medical or otherwise, to do so.

*Second*, the twelve-month reference in the ALJ's opinion does not require remand. Petty is correct that the durational requirement screens impairments at step two and supplies no license to disregard short-lived symptoms at the RFC stage. *See Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950-51 (11th Cir. 2014). But the ALJ did not disregard the symptom, she merely found that it imposed no workplace functional limitation. Doc. 9-18 at 29. The sentence Petty attacks states two grounds in the conjunctive, and the second basis stands on its own. An adequately explained and supported ultimate finding is not undone by an additional, unnecessary observation. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *Dyer*, 395 F.3d at 1210-11; *Hutchison*, 787 F.2d at 1463.

13

Nor was the durational observation per se inappropriate. The regulations direct the ALJ to evaluate the "intensity and persistence" of symptoms, 20 C.F.R. § 404.1529(c)(1), and duration is an aspect of persistence. The RFC, in turn, describes, what a claimant can do on a "regular and continuing basis" during the period at issue. SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). Petty's complaints of urinary urgency and incontinence cluster within a window of a few months in the spring and summer of 2022, out of a relevant period spanning May 2021 through December 2022, *see* Doc. 9-18 at 27-29, and she identifies no evidence that those symptoms persisted at that severity through her date last insured, *see generally* Doc. 13. The ALJ could reasonably weigh that limited persistence in deciding whether the restriction belonged in Petty's RFC.

The ALJ's discussion could have been fuller, but she need not document every aspect of the decision at optimal length. *Hutchison*, 787 F.2d at 1463. Read against the whole of her analysis, including Petty's largely normal examinations, the effective and conservative course of treatment she received, and the absence of any corroborating medical opinions, Doc. 9-18 at 23-30, the ALJ's conclusion is reasonable.

*Third*, Petty's reports of nausea and stomach pain do not alter the analysis. They appear in two isolated notations: a January 2022 report attributing nausea to mental-health medication, and a January 2023 rheumatology note, recorded days

14

after Petty's date last insured, stating that gabapentin helped her pain to an extent but was associated with nausea and stomach pain. Doc. 13 at 26. Neither source suggested any functional restriction, and Petty identifies no such limitation flowing from these complaints that the RFC omits. An ALJ need not "specifically refer to every piece of evidence" so long as the decision reflects consideration of the claimant's condition as a whole. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Dyer*, 395 F.3d at 1211; *Burke v. Kijakazi*, No. 5:22-cv-389, 2023 WL 5103134, at *3 (N.D. Ala. Aug. 9, 2023). This decision does.

*Finally*, because the ALJ permissibly found no side-effect-related limitation, she was not required to include one in the hypothetical posed to the vocational expert. *Crawford*, 363 F.3d at 1161. Petty's contrary argument assumes restrictions that no evidence establishes, and speculation of that kind will not support remand. *Wallace*, 2018 WL 1399255, at *6. Her objections ultimately ask the Court to reweigh the evidence of her side effects and draw a different conclusion than the ALJ. That is not the Court's role. *Dyer*, 395 F.3d at 1210.

## CONCLUSION

Substantial evidence supports the ALJ's evaluation of the medical opinion evidence, her consideration of Petty's obesity, and her assessment of Petty's subjective complaints, including the alleged medication side effects, and the ALJ applied the correct legal standards. Accordingly, the Court **AFFIRMS** the Commissioner's decision. Final judgment will be entered separately.

**DONE** and **ORDERED** this 16th day of July, 2026.

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE

16